# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GLEN SEARCY and NADINE SEARCY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 10-0199-W-CV-GAF |
| ) | |
| MID-AMERICA EYE CENTER, P.C. and ) | |
| JOSEPH J. PARELMAN, M.D., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Presently before the Court are Defendants Joseph J. Parelman, M.D.'s ("Dr. Parelman") and Mid-America Eye Center, P.C.'s ("Mid-America") (collectively "Defendants") separate Motions to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), respectively. (Doc. ## 4-5). Upon consideration of the parties' respective arguments and for the following reasons, both Motions are **DENIED**.[1]

## DISCUSSION

**I.    Facts**[2]

The instant medical malpractice action arises from an eye infection Mr. Searcy suffered following an eye procedure performed by Dr. Parelman, which resulted in Mr. Searcy losing sight in his left eye. Plaintiffs are a married couple who reside in Missouri. Mid-America is a Kansas

---

[1]Also pending is Plaintiffs Glen and Nadine Searcy's (collectively "Plaintiffs") Motion for Leave to File Amended Complaint. (Doc. # 15). The Court should freely grant leave to amend where justice so requires. Fed. R. Civ. P. 15(a)(2). Because of the relative infancy of this case and Defendants' lack of opposition, Plaintiffs' Motion is **GRANTED.**

[2]All facts are taken from Plaintiffs' Proposed Amended Complaint (Doc. # 16-1) unless otherwise noted.

1

corporation that transacts business in both Missouri and Kansas. Dr. Parelman is a Kansas resident who transacts business in Missouri and Kansas, uses Missouri and Kansas real estate for business purposes, provides treatment to patients in Missouri and Kansas, and has previously initiated a legal action before a Missouri court. At all relevant times, Dr. Parelman was an employee of Mid-America and was allegedly acting within the course and scope of his employment when performing the procedure on Mr. Searcy. Both Dr. Parelman and Mid-America are qualified for coverage under Kansas's Health Care Stabilization Fund. (Noll Aff., ¶¶ 2-3).

On January 17, 2008, Dr. Parelman performed a procedure known as EDTA chelation to treat Mr. Searcy's left eye for a condition diagnosed as calcific band keratopathy at Mid-America's Kansas location. Plaintiffs allege that, while preforming that procedure, Dr. Parelman dropped the lens he had prepared to place in Mr. Searcy's left eye. However, rather than obtain a new sterile lens, Plaintiffs allege Dr. Parelman instructed his assistant to rinse the dropped lens off and then proceeded to place the dropped lens in Mr. Searcy's left eye. Four days after the procedure, Mr. Searcy developed a serious infection in his left eye, which resulted in total loss of vision in this eye. Mrs. Searcy alleges that, as a result of Mr. Searcy's loss of eye sight, she was forced "to shoulder additional physical and emotional burden and responsibility of caring for her injured husband, household chores, maintenance and upkeep." Mrs. Searcy also alleges her marital relationship with Mr. Searcy was adversely affected due to the financial and emotional stress caused by the incident.

## II.     Legal Standards

### A.     *Rule 12(b)(2): Personal Jurisdiction*

An action may be dismissed if the district court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "A federal court may exercise jurisdiction 'over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the

Constitution.'" *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (quoting *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). The plaintiff bears the burden of proving facts supporting personal jurisdiction. *Id.* "The plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (quotations and citations omitted).

### B. *Rule 12(b)(6): Failure to State a Claim*

Pursuant to Rule 12(b)(6), a motion to dismiss may be granted if the complaint fails to state a claim upon which relief may be granted. When considering a motion to dismiss, the Court treats all well-pled facts as true and grants all reasonable inferences therefrom in favor of the non-moving party. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). However, the Court is not required to accept the pleader's legal conclusions. *Id.* A complaint need not contain detailed factual allegations; however, a plaintiff must provide more than "labels and conclusions" or a "formulaic recitation" of the elements of the cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (retiring the "no set of facts" language in *Conley v. Gibson*, 355 U.S. 41 (1967)). Factual allegations, when taken as true, must raise more than a speculative right to relief. *Id.* However, Plaintiff need only plead enough facts to "nudge[ his] claim across the line from conceivable to plausible." *Id.* at 570.

### III. Analysis

### A. *Motion to Dismiss Dr. Parelman for Lack of Personal Jurisdiction*

For this Court to have jurisdiction over Dr. Parelman, two standards must first be met: (1) Missouri's long-arm statute; and (2) the Due Process Clause of the Constitution. *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991). Each test is addressed here, in turn.

*1. Missouri's Long-Arm Statute*

Pursuant to the Missouri long-arm statute,

> Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
>
> (1) The transaction of any business within this state;
>
> (2) The making of any contract within this state;
>
> (3) The commission of a tortious act within this state;
>
> (4) The ownership, use, or possession of any real estate situated in this state;
>
> (5) The contracting to insure any person, property or risk located within this state at the time of contracting;
>
> (6) Engaging in an act of sexual intercourse within this state with the mother of a child on or near the probable period of conception of that child.

Mo. Rev. Stat. § 506.500.1. The Missouri long-arm statute has been construed to confer jurisdiction to the fullest extent permitted by the Due Process clause. *Bryant v. Smith Interior Design Group, Inc.*, – S.W.3d –, 2010 WL 797003, at *3 (Mo. Mar. 9, 2010) (en banc). Extra-territorial tortious acts that yield consequences in Missouri are subsumed under the tortious act section of the long-arm statute. *Id.* (citing *Longshore v. Norville*, 93 S.W.3d 746, 752 (Mo. Ct. App. 2002); *Schwartz & Assocs. v. Elite Line, Inc.*, 751 F. Supp. 1366, 1369 (E.D. Mo. 1990)).

Here, Plaintiffs allege that Mr. Searcy suffered from his eye infection in Missouri, which arose out of Dr. Parelman's conduct in Kansas. Because these allegations demonstrate Dr. Parelman's acts

produced consequences in Missouri, they are sufficient to place him within the reach of Missouri's long-arm statute.

　　　　2.　　　*Due Process Clause*

"The Due Process Clause requires that 'minimum contacts' exist between the nonresident defendant and the forum state before the court can exercise jurisdiction over the defendant." *Miller*, 528 F.3d at 1090. "Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994) (quoting *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991)). "In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 818-19.

The Eighth Circuit has adopted a five-part test for measuring minimum contacts: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Miller*, 528 F.3d at 1091 (quotation and citations omitted). When addressing the third factor, courts distinguish between specific jurisdiction and general jurisdiction. *Id.* "General jurisdiction exists where the contacts between the defendant and the forum state are 'continuous and systematic' even if there is no relationship between the contacts and the cause of action." *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006) (citing

5

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 145 (1984)). In this case, the Court has general jurisdiction over Dr. Parelman.[3]

Plaintiffs' Amended Complaint makes allegations that, if true, Dr. Parelman's contacts with Missouri are significant, continuous, and systematic. Plaintiffs allege Dr. Parelman conducts business in Missouri, uses Missouri real estate for this business, and provides medical treatment to patients at Missouri hospitals. (Am. Complaint, ¶ 5; Doc. # 17 Exs. A-E). Additionally, he has previously initiated at least one lawsuit in a Missouri court. (Doc. # 17, Ex. K). These contacts directly affect the commerce and residents of Missouri and, therefore, are of such a nature, quality, and quantity that Dr. Parelman should reasonably anticipate being haled into a Missouri court.

Further, Missouri has an interest in providing a forum for lawsuits alleging its residents have been injured as a result of a medical procedure. *See Missouri ex rel. Specialized Transp., Inc. v. Dowd*, 265 S.W.3d 858, 862 (Mo. Ct. App. 2008). Finally, because this Court sits in Kansas City, Missouri, which lies on the Missouri-Kansas border, and Dr. Parelman lives in a town just across the state line, he will not be substantially inconvenienced by defending himself in this jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 301 n.1 (1980) ("[A] courtroom just across the state line from a defendant may often be far more convenient for the defendant than a courtroom in a distant corner of his own State.").

Finding that both Missouri's long-arm statute and the minimum contacts test have been satisfied, personal jurisdiction over Dr. Parelman exists in this Court. Accordingly, his Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED.**

### B. *Motion to Dismiss Mid-America for Failure to State a Claim*

---

[3]The Court need not address whether it has specific jurisdiction over Dr. Parelman because general jurisdiction exists.

Plaintiffs allege Mid-America is vicariously liable for Dr. Parelman's conduct that caused Mr. Searcy's eye infection. Mid-America argues Kansas law should apply to Plaintiffs' claims while Plaintiffs contend Missouri law is applicable. Under Kansas law,

> A health care provider who is qualified for coverage under the [Health Care Stabilization Fund] shall have no vicarious liability or responsibility for any injury or death arising out of the rendering of or the failure to render professional services inside or outside this state by any other health care provider who is also qualified for coverage under the fund.

Kan. Stat. Ann. § 40-3403(h) (2010). Because both Mid-America and Dr. Parelman are qualified for coverage under Kansas's Health Care Stabilization Fund, under Kansas law, Plaintiffs are barred from recovering from Mid-America under a vicarious liability theory, even if Dr. Parelman is ultimately found negligent. *Glassman v. Costello*, 986 P.2d 1050, 1060 (Kan. 1999). On the other hand, Missouri law would allow recovery from Mid-America. *See* Mo. Rev. Stat. § 538.210 (2005).

Federal courts sitting in diversity apply the forum state's choice-of-law rules. *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir. 2009). Missouri courts apply the "most significant relationship" test for tort claims. *Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir. 2008). "Under this test, the identity of the state having the most significant relationship will depend upon the nature of the cause of action and upon the particular legal issue in dispute." *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir.1994).

When applying the most significant relationship test, courts examine the following contacts: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties is centered. *Goede v. Aeroject Gen. Corp.*, 143 S.W.3d 14, 24-25, n.6 (Mo. Ct. App. 2004) (quoting Restatement (Second) of Conflict of Laws § 145 (2009)). For personal injury actions, a presumption exists that the state with the most

7

significant relationship is the state where the injury occurred, unless another state has an overriding interest based on the factors articulated in Section 6 of the Restatement (Second) of Conflict of Laws. *Wolfley*, 541 F.3d at 823. *See also* Restatement (Second) of Conflict of Laws § 146 (2009). These factors are:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2).

The "place where the injury occurred" is considered to be "the place where the force set in motion by the actor *first takes effect on the person*." *Natalini v. Little*, 185 S.W.3d 239, 248 (Mo. Ct. App. 2006) (emphasis in original). While the conduct causing Mr. Searcy's eye infection undisputedly occurred in Kansas, it appears the eye infection first effected him in Missouri. Thus, absent an overriding interest from Kansas, Missouri law will apply. *Wolfley*, 541 F.3d at 823.

As previously stated, Kansas law precludes a health care provider from being vicariously liable for another health care provider, provided both are covered by the Health Care Stabilization Fund. Kan. Stat. Ann. § 40-3403(h). The Kansas legislature enacted Section 40-3403(h) "in an attempt to reduce the cost of medical malpractice insurance by eliminating duplicative and arguably unnecessary coverage." William E. Westerbeke & Stephen R. McAllister, *Survey of Kansas Tort*

8

*Law: Part I*, 49 U. Kan. L. Rev. 1037, 1046 (2001). While Kansas's concern over the cost of medical malpractice insurance is surely justified, it does not outweigh Missouri's interest in ensuring its residents are fully compensated for injuries they have suffered as a result of medical malpractice. Missouri residents have a justified expectation, under the law of their state, that both the medical provider and his superior will be liable for injuries sustained during the course of treatment, and Missouri has an interest in protecting this expectation. Because Missouri law allows vicarious liability in medical malpractice actions, Mid-America's Motion is **DENIED.**

## **CONCLUSION**

Taking Plaintiffs' allegations as true, Dr. Parelman's tortious conduct produced consequences in Missouri, and he has continuous and systematic contact with Missouri. This Court, therefore, has personal jurisdiction over Dr. Parelman; his Motion is **DENIED**. Missouri's interest in this action outweighs Kansas's interest; therefore, Missouri law, which allows vicarious liability in medical malpractice actions, applies. Mid-America's Motion is **DENIED**.

**IT IS SO ORDERED.**

                                                          s/ Gary A. Fenner
                                                          Gary A. Fenner, Judge
                                                          United States District Court

DATED: April 22, 2010